**293 P.2d 931**

**STATE of Arizona, Appellee,**

**v.**

**Andrew POLAN, Appellant.**

**No. 1080.**

Supreme Court of Arizona.

Feb. 21, 1956.

130

—————♦—————

Alan Philip Bayham, Phoenix, for appellant.

Robert Morrison, Atty. Gen., L. Alton Riggs, Sp. Asst. Atty. Gen., and Wm. S. Andrews, Deputy County Atty., Phoenix, for appellee.

UDALL, Justice.

A jury found Andrew Polan, defendant-appellant, guilty of murder in the first degree, and fixed the punishment at life imprisonment. Judgment was thereafter rendered and sentence imposed. An appeal was timely taken, and four specifications of error and three propositions of law are presented for our consideration. The defendant is claiming that prejudicial error was committed, hence he is asking that the judgment be reversed with directions to grant a new trial.

Defendant was previously tried for the same offense. This resulted in an identical verdict, judgment and sentence. On appeal we reversed (Justice LaPrade dissenting), because of what we considered to be prejudicial error. The facts are set forth in our prior decision of State v. Polan, reported in 78 Ariz. 253, 278 P.2d 432, and need not be restated here.

All of the claimed errors arise out of the admission and subsequent unrestricted use of certain impeaching testimony. The murder took place at about 2 a. m. on the morning of October 31, 1953. Defendant and his common-law wife, then known as Irene Entsminger, were taken into custody shortly thereafter by policemen of the City of Phoenix. At about 10 a. m. that morning these parties were interrogated by deputy county attorney William S. Andrews and detective Edward Langevin, in the presence of another policeman and Sandra McFate, the official court reporter. The latter took down in shorthand all questions propounded and answers given; these notes were later dictated into an audograph recording machine and then typewritten by another typist. The transcript of Irene Entsminger's statement was marked as state's exhibit "Y" for identification. A disc recording was also made at the time the interrogations took place.

██ Defendant's wife, who did not testify at the first trial, was called as a defense witness and on cross-examination, for the purpose of impeachment, the prosecutor read from her prior statement and asked if certain questions had not then been put to her, and if she had not given the answers therein recorded. The usual answer was she did not remember, but as to many of the purported answers she denied having made the same.

The first specification of error reads:
"The court erred in admitting the oral testimony of the impeaching witness, Sandra McFate, in view of the

fact said witness was unable to recall the inconsistent statements purportedly made by defense witness, Irene Entsminger Polan, and was unable to refresh her memory as to same."

In support of this the following proposition of law is advanced:

"An impeaching witness cannot be permitted to testify orally to questions and answers of which the witness has no present independent or revived recollection."

The record discloses that a proper foundation was laid for the reporter's testimony. Mrs. McFate testified that the transcript "was a correct and accurate transcription of the questions and answers that were made at that time"; that she "had no independent recollection of what this transcript contained"; and that after rereading the writing some seventeen months later she has not sufficient present recollection revived to testify accurately in regard thereto. The court permitted the transcript to be used under the theory of *past recollection recorded*. Kinsey v. State, 49 Ariz. 201, 65 P.2d 1141, 125 A.L.R. 3. The fact that the entire statement (Exhibit "Y" for identification) was not formally admitted in evidence does not alter the situation. She having taken the witness stand many parts of the transcript would have been wholly inadmissible under any theory, and those portions that were impeaching in character were all read into the record and hence were in evidence. There is no merit whatever to this assignment.

Defendant's second specification of error raises the issue as to whether the trial court has a duty *sua sponte* to instruct the jury that proof of prior inconsistent statements of defense witnesses—where such statements are used solely for impeachment purposes—is for the purpose of discrediting such witnesses and not as affirmative proof of the facts therein related. He urges that pursuant to the Arizona Constitution, Article 6, section 12, and to Rules Cr.Proc. § 322, Sec. 44–1840, A.C.A.1939, to the effect that:

"The court shall instruct the jury regarding the law applicable to the facts of the cause."

the trial court's neglect to so instruct, without any request whatever for such cautionary warning, is fundamental error and therefore reversible. With this we cannot agree. In the recent case of Welch v. Medlock, 79 Ariz. 247, 286 P.2d 756, we pointed out the limited purpose for which contradictory prior statements may be used in a trial, and held it reversible error for the trial court to deny plaintiff's motion—repeatedly made—for an appropriate limiting instruction. In the case at bar admittedly no such instruction was ever requested, either at the time the evidence was introduced or in the settling of jury instructions concerning the law of the case. The general rule is that failure to request such a limiting instruction constitutes a waiver of any right to such an admonition. Therefore, the court's failure, sua sponte, so to instruct, was not error in this case.

People v. Grace, 88 Cal.App. 222, 263 P. 306, 311; State v. Boyatt, 59 Idaho 771, 87 P.2d 992, 998; Hicks v. State, 93 Okl.Cr. 311, 227 P.2d 685, 689; State v. De Zeler, 230 Minn. 39, 41 N.W.2d 313, 319, 15 A.L.R. 2d 1137. Cf. Sullivan v. State, 47 Ariz. 224, 234, 55 P.2d 312; James v. State, 53 Ariz. 42, 48, 84 P.2d 1081; Browning v. State, 53 Ariz. 174, 184, 87 P.2d 112; Burgunder v. State, 55 Ariz. 411, 421, 103 P.2d 256; State v. Voeckell, 69 Ariz. 145, 210 P.2d 972. The compelling reason why the omission of the court to give special instructions upon particular features of the case is not reversible error is most cogently expressed by former Chief Justice Franklin in the leading case of Sisson v. State, 1914, 16 Ariz. 170, 177, 141 P. 713, 715. It is there pointed out that to adopt such a rule as is here urged by defendant " 'would be wrong in theory and mischievous in re-·sults' ".

■ However, defendant contends we have laid down a different rule in the recent cases of State v. Betts, 71 Ariz. 362, 227 P.2d 749, and State v. Chee, 74 Ariz. 402, 250 P.2d 985. Therein we held that the court's failure to instruct the jury concerning the requirements of a statute prescribing the quantum of evidence necessary to prove the crime of perjury, *whether requested or not,* was reversible error. A careful reading of these cases at once indicates their inapplicability to the case at bar. There the omitted instruction pertained to a statutory "quantitative" rule of evidence. The nature of "quantitative" rules is that in given cases they require certain kinds of evidence to be associated with other evidence before the case will be allowed to go to the jury. If the necessary quantum of proof has not been made then as a matter of law defendant cannot be convicted. Such "quantitative" rules are in our system of law relatively few and unimportant, Wigmore on Evidence, 3d Ed., Vol. IV, Sec. 1172, yet in a given case such a statutory rule as was there involved must be complied with, or a legal conviction cannot be had. These cases hold it is incumbent upon the trial court in such a situation to recognize the peculiar necessity of proof of the crime charged and so to instruct the jury. It must in all events be instructed upon the required minimum quantity of proof needed to convict.

In this case no such rule is involved. We are here concerned with a "qualitative" rule of evidence, to the effect that the limited probative value of prior inconsistent statements makes them admissible solely for impeachment purposes. Such a "qualitative" rule of evidence is not a part of the law pertaining to the offense charged so as to be a fundamental principle requiring mandatory instruction thereon by the trial judge in the absence of specific and timely request. We hold the rule of the Betts and Chee cases has no application here. On the basis of this record, defendant—having failed to request a cautionary instruction—has no legal cause for complaint.

 Defendant's two remaining specifications of error are that it was error for the trial court to deny his motion for a new trial in view of the closing argument of the prosecution which was allegedly unfair and improper in that it stated as facts affirmatively proved, matters which were brought out on the state's rebuttal for impeachment purposes only. This, it is maintained, resulted in manifest prejudice and denied to him a fair and impartial trial.

We have most carefully read the arguments of counsel for the state and find that in a few instances—not many—impeachment evidence as to certain facts was treated as though such facts had been substantively established. Admittedly the only purpose for which this impeachment evidence was introduced was to destroy or discredit in the minds of the jury testimony of a defense witness given on the stand at the present trial. In the instant case defense counsel did not object at any time to the improper use made of this impeaching evidence in the state's closing arguments to the jury. The matter is raised here for the first time. As we recently held in the case of State v. Boozer, 80 Ariz. 8, 291 P.2d 786, 789, wherein the Arizona and other authorities are collated, "Failure to object to argument of counsel for the state constitutes a waiver of right to have it reviewed." Incidentally, we have examined the motion for new trial and the reasons now advanced do not appear therein.

After a careful examination of the entire record it is our considered opinion that the defendant was given a fair and impartial trial as is guaranteed by law. A jury of his peers convicted him of a brutal murder for which he must now pay the prescribed penalty.

Judgment affirmed.

LA PRADE, C. J., and WINDES, PHELPS, and STRUCKMEYER, JJ., concurring.